Rebecca R. FULTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee,

and

Charles Anthony FULTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 91–CA–907–MR, 91–CA–908–MR.

Court of Appeals of Kentucky.

Oct. 2, 1992.

Rehearing Denied Dec. 24, 1992.

Discretionary Review Denied by Supreme Court April 14, 1993.

David R. Steele, Independence, for appellants.

Chris Gorman, Atty. Gen., Scott C. Sutherland, Asst. Atty. Gen., Frankfort, for appellee.

Before EMBERTON, HOWERTON and STUMBO, JJ.

HOWERTON, Judge.

Rebecca R. Fulton and her husband, Charles Anthony Fulton, each appeal from a conviction in the Mason Circuit Court for promoting contraband in the first degree by complicity. Each was given a sentence of five years. Their appeals present the same issues, and their cases have been consolidated for our review. We will refer to Rebecca as Becky and to Charles Anthony as Tony, or to both as the Fultons.

The facts are generally undisputed. Tony had been incarcerated at the Mason County Detention Center, along with two co-defendants, Ron Allen Reed and William Ray "Billy" Highfield. These three, along with Becky and Angel Reed, conspired to smuggle drugs into the Detention Center. The final arrangement was to have Billy Highfield's grandmother, Dorothy Bothman, bring clothes and cassette tapes to the facility. On June 14, 1990, Ms. Bothman did as requested and brought the clothing and cassette tapes to the jail.

Upon arrival, Ms. Bothman was escorted to the "booking area" and instructed by a guard to "put the clothes over on the chair." She did so and then left. The deputy jailers proceeded to check the clothing and inspect the tapes. Hidden in the tapes were seven Percodan tablets and one marijuana joint. The indictment against Becky and Tony read as follows:

The Grand Jury Charges:

That on or about the 14th day of June, 1990, in Mason County, Kentucky, the above named defendants committed the offense of Promoting Contraband in the First Degree by conspiring to cause Dorothy Bothman to introduce dangerous contraband into the Mason County Jail, against the peace and dignity of the Commonwealth of Kentucky.

On appeal, Becky and Tony present three primary allegations for reversal. They argue that the indictment did not charge them with a felony, claiming that conspiracy to commit a Class D felony is a Class A misdemeanor. They further argue that the Commonwealth failed to prove that illegal contraband was actually brought into a "detention facility" in violation of any statute. Finally, they argue that the court erred in failing to grant a directed verdict

of acquittal on any felony charge. We find no reversible error and affirm.

While it is true that mere criminal conspiracy to commit a Class C or D felony constitutes a Class A misdemeanor (KRS 506.040), when the actual crime is committed, the co-conspirators are guilty of the committed offense by complicity. KRS 502.020 is entitled "Liability for conduct of another—Complicity." It reads in pertinent part as follows:

> (1) A person is guilty of an offense committed by another person when, with the intention of promoting ... the commission of the offense, he:
>
> (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or
>
> (b) Aids, counsels, or attempts to aid such person in planning or committing the offense
>
> ....

If the offense of promoting contraband in the first degree was committed by another person, Becky and Tony Fulton could properly be convicted of committing the same offense by complicity. That was the precise charge for which the jury found each to be guilty.

■ Becky and Tony each argue that the indictment was insufficient. The Commonwealth claims that this issue was not preserved for review on appeal since it was not raised before the trial court. The Fultons, however, contend that they are claiming the offense charged was, at best, a misdemeanor and therefore the circuit court did not have jurisdiction to even try the case. KRS 24A.110. They should therefore be entitled to challenge the validity of the indictment on jurisdictional grounds which may be raised at any time. Although we determine that the indictment did charge the parties with a felony, we will nevertheless briefly consider the sufficiency of the indictment.

RCr 6.10(2) provides that an indictment "shall contain, and shall be sufficient if it contains, a plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged." *Wylie v. Commonwealth*, Ky., 556 S.W.2d 1, 2 (1977) held, "[a]n indictment under this section is sufficient if it informs the accused of the specific offense with which he is charged and does not mislead him." The case of *Howard v. Commonwealth*, Ky., 554 S.W.2d 375, 377 (1977), also provided that, "[u]nder our Rules of Criminal Procedure, which embrace the principle of notice pleading, an indictment is sufficient if it fairly informs the defendant of the nature of the crime with which he is charged, without detailing the 'essential factual elements.'"

■ We can only conclude that the indictment was sufficient to charge the felony offense of promoting contraband in the first degree. It indicated that it was accomplished by conspiring to cause Ms. Bothman to introduce dangerous contraband into the Mason County Jail. If in fact the offense was completed, this would indeed amount to promoting contraband in the first degree by complicity. The "essential facts" necessary to constitute the offense of promoting contraband in the first degree are found in KRS 520.050, which reads as follows:

> (1) A person is guilty of promoting contraband in the first degree when:
>
> (a) *He knowingly introduces dangerous contraband into a detention facility or a penitentiary;*
>
> .      .      .      .      .
>
> (2) Promoting contraband in the first degree is a Class D felony. (Emphasis added.)

In addressing the Fultons' contention that the indictment actually charged them with the misdemeanor offense of conspiracy, it is important to note that "[i]t long has been settled ... that a 'conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy.'" *American Tobacco Co. v. U.S.*, 328 U.S. 781, 789, 66 S.Ct. 1125, 1129, 90 L.Ed. 1575 (1946). The defendants were not charged with the separate offense of "criminal conspiracy," but were charged with the *object* of their conspiracy which was accomplished by planning and succeeding to introduce dangerous contraband into a detention facility. Although the defendants only participated in a conspiracy to commit the

offense, they did aid and conspire with each other and Ms. Bothman to complete the criminal offense of promoting contraband in the first degree. In *Hall's Adm'r v. Hall,* 285 Ky. 730, 736, 149 S.W.2d 24 (1941), we find, "[i]t is well settled that where two or more persons enter into an agreement, tainted with conspiracy, any act done by either or any one in furtherance of the design becomes the act of all, and each participant is responsible for the result." *See also* KRS 502.020 on complicity. We conclude that the felony offense was committed, if in fact the Commonwealth proved that the contraband was brought into a "detention facility."

■ This brings us to the next argument presented by the Fultons. They claim that the "booking room" where Ms. Bothman brought the contraband is not a "place used for the confinement of a person." KRS 520.010(4), as it read at the time the offense was committed, defined "detention facility" as "any place used for the confinement of a person...." If the contraband was never brought into a "detention facility," then the Fultons argue that they could only be guilty of an attempt. We note that the jury was instructed on attempt, but it found them guilty of the basic offense. We also agree with the jury and the trial court that, as a matter of law, the contraband did enter a "detention facility."

The commentary accompanying the criminal code may be used as an aid in construing its provisions. KRS 500.100. The commentary accompanying KRS 520.050 provides in pertinent part that "[i]t is the presence of forbidden articles within a detention facility *where the inmate has access to them* that creates a risk to institutional security." (Emphasis added.) The booking area was a room within the jail where certain inmates were permitted to enter. This would indicate that, technically, they would have access to articles within the room. We also note that the commentary accompanying the definition of detention facility in KRS 520.010(4) provides that, "[t]he definition encompasses restraint in a work camp ... and a pasture in which a prisoner is looking after dairy cattle...." This would indicate that the definition is broad and encompasses any area in which the prisoner can permissively go, which would indicate that the booking area

would also be included as part of the facility. Clearly, we would not want to restrict an interpretation of the detention facility to the cell in which a prisoner is usually confined. He is also confined when he is out of his cell but anywhere within the building where he might at times have access but not be at liberty to leave.

The new statutory definition of "detention facility" includes the entire premises, but we do not view this modification as a change so much as a clarification of what should be included in the definition. A reasonable interpretation of the old definition would clearly allow the inclusion of the "booking area" in the jail.

■ The Fultons next contend that they were entitled to a directed verdict of acquittal. We disagree. *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530, 533 (1977), provides that "[i]f under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." *See also Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991). More than sufficient evidence was presented to find Becky and Tony guilty as charged, and it was clearly not error by the trial court to deny their motions for a directed verdict.

■ Finally, we note that Tony contended that, since he was incarcerated, he had to have *possession* of the contraband to be convicted according to the statute. This is clearly wrong. He was convicted through a *conspiracy* to introduce the contraband into the jail and therefore was liable on those terms. Since the conspiracy was completed, he was guilty of the basic offense by complicity, and we find no error in his conviction.

The judgments of the Mason Circuit Court are affirmed.

All concur.