**J.D.K., a Juvenile, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2000–CA–001140–DG.

Court of Appeals of Kentucky.

Aug. 17, 2001.

J. David Niehaus, Daniel T. Goyette, Louisville, KY, for appellant.

A.B. Chandler III, Attorney General of Kentucky, Teresa Young, Special Assistant Attorney General, Anne Haynie, Louisville, KY, for appellee.

Before BUCKINGHAM, COMBS and SCHRODER, Judges.

## OPINION

SARA WALTER COMBS, Judge:

J.D.K., a juvenile, challenges the authority of the Jefferson District Court to require him to give a blood sample to be compiled in the state's centralized DNA database pursuant to Kentucky Revised Statutes (KRS) 17.170(1). This matter originated in Jefferson District Court, was appealed to Jefferson Circuit Court, and is now before us upon our grant of discretionary review. After our review of the statute, we conclude that the lower courts erred in applying the provisions of KRS 17.170 to the appellant. Thus, we reverse.

On November 18, 1999, J.D.K., then fourteen years of age, pled guilty in Jefferson District Court, Juvenile Session, to two counts of sodomy in the first degree and two counts of sexual abuse based upon inappropriate sexual conduct perpetrated upon his nine-year-old sister and her eight-year-old friend. As a result of his plea, J.D.K. was adjudicated delinquent by the district court and was committed to the Department of Juvenile Justice for placement in a residential treatment center. In addition, J.D.K. was ordered: to attend counseling, to remain away from children under fourteen years of age unless supervised, and to refrain from contact with his two victims unless approved by a therapist.

The issue before us is the Commonwealth's request that J.D.K. also be ordered to provide a blood sample for analysis and storage in the DNA database maintained at the Kentucky State Police Forensic Laboratory. After giving the parties an opportunity to brief the issue of the applicability of KRS 17.170 to juveniles, the district court granted the Commonwealth's motion. In its opinion and order, the district court stated that it was persuaded by the Commonwealth's argument that the statute "does not expressly exclude juveniles." It also analyzed and analogized to statutes pertaining to the retention of fingerprints obtained from juveniles, reasoning that there was "no legitimate reason for treating DNA samples any differently." On appeal, the circuit court adopted the opinion of the district court as its own without further elaboration. The matter is now before this Court on discretionary review.

 As the proper interpretation of KRS 17.170(1) is purely a legal issue, our review is *de novo. Floyd County Board of Education v. Ratliff,* Ky., 955 S.W.2d 921, 925 (1997); *Keeton v. City of Ashland,*

Ky.App., 883 S.W.2d 894, 896 (1994). It is our duty to construe the statute "so as to effectuate the plain meaning and unambiguous intent expressed in the law." *Bob Hook Chevrolet Isuzu v. Commonwealth of Kentucky, Transportation Cabinet,* Ky., 983 S.W.2d 488, 492 (1998). We understand that the judiciary is "not at liberty to add or subtract from the legislative enactment ..." or to attempt to cure any omissions. *Commonwealth v. Harrelson,* Ky., 14 S.W.3d 541, 546 (2000); *Commonwealth v. Taylor,* Ky., 945 S.W.2d 420 (1997).

All fifty states and the federal government have enacted DNA database legislation in some form or another. *See Landry v. Attorney General,* 429 Mass. 336, 709 N.E.2d 1085, 1087 (Mass.1999); Anno. *Validity, Construction, and Operation of State DNA Database Statutes,* 76 ALR5th 239 (2000). The Kentucky General Assembly established a DNA database in 1992 when it enacted KRS 17.170 and 17.175. Our legislature expressed its purpose in creating and maintaining a DNA database as follows:

> to assist federal, state, and local criminal justice and law enforcement agencies within and outside the Commonwealth in the identification, detection, or exclusion of individuals who are subjects of the investigation or prosecution of sex-related crimes, violent crimes, or other crimes and the identification and location of missing and unidentified persons.

KRS 17.175(2).

KRS 17.170(1), the specific section of the statutory scheme at issue in this case, identifies those who are required to provide blood samples for inclusion in the database as follows:

> Any person convicted on or after July 14, 1992, of a felony offense under KRS Chapter 510 or KRS 530.020, shall, or who is in the custody of the Department of Corrections on July 14, 1992, under

KRS Chapter 510 or KRS 530.020 may, have a sample of blood taken by the Department of Corrections for DNA (deoxyribonucleic acid) law enforcement identification purposes and inclusion in law enforcement identification databases.

In challenging the DNA-testing order, J.D.K. argues that he does not come within the purview of the statute for the reason that he has never been "convicted" of any crime. He relies on the provisions of KRS 635.040 as authority for the effect to be given to juvenile court adjudications. That statute, which was in existence at the time KRS 17.170 was enacted, specifically and unambiguously forbids treating a juvenile adjudication as a conviction for any purpose:

> No adjudication by a juvenile session of district court shall be deemed a conviction, nor shall such adjudication operate to impose any of the civil disabilities ordinarily resulting from a criminal conviction, nor shall any child be found guilty or be deemed a criminal by reason of such adjudication.

KRS 635.040.

J.D.K. also argues that he was not convicted or adjudicated guilty of a *felony*, which by definition includes: "an offense for which a sentence to a term of imprisonment of at least one (1) year in the custody of the Department of Corrections may be imposed" (KRS 500.080(5)) or an offense "punishable by death or confinement in the penitentiary." (KRS 431.060(1)). J.D.K. contends that the court must presume that the legislature was aware of these definitions at the time that it enacted the DNA database legislation and that it did not intend to include juveniles (adjudicated as public offenders in juvenile court) within the class of persons from whom blood samples could be obtained.

■ We agree that KRS 635.040 nullifies the Commonwealth's attempt to characterize J.D.K.'s adjudication as a "conviction" for purposes of applying KRS 17.170. Furthermore, the Unified Juvenile Code does not distinguish between or among felonies, misdemeanors, or violations for purposes of dispositions in juvenile court. *See A.E. v. Commonwealth,* Ky.App., 860 S.W.2d 790, 793 (1993). While J.D.K. admitted committing offenses which would have resulted in felony convictions had they been susceptible of prosecution in circuit court, there is no legitimate basis for treating his juvenile court adjudication as a conviction—much less as a felony conviction—for purposes of the DNA database. J.D.K. is correct in arguing that the legislature is presumed to be aware of statutes that it has previously enacted. *Cook v. Ward,* Ky., 381 S.W.2d 168 (1964). Thus, by employing the words *convicted* and *felony*—words which the legislature itself has expressly defined and to which it has given technical meaning—it plainly intended that juveniles adjudicated in district court not be included in the DNA database. The district court essentially erred in re-defining those terms. KRS 446.080(4); *Griffin v. City of Robards,* Ky., 990 S.W.2d 634, 638 (1999).

The district court also accepted the Commonwealth's argument that inconsistencies in the use of the terms *convictions* and *felony* within the juvenile code justify the inclusion of juveniles within the ambit of KRS 17.170. The court relied on KRS 635.505(2), a statute relating to the treatment of juvenile sex offenders, to conclude that juveniles "can be 'convicted' of 'felonies' within the meaning of KRS 17.170(1)." KRS 635.505(2) provides:

> A "juvenile sexual offender" as used in this chapter means an individual who was at the time of the commission of the offense under the age of eighteen (18) years who is not actively psychotic or

mentally retarded and who has been adjudicated guilty of or **has been convicted of** or pled guilty to:

(a) A **felony** under KRS Chapter 510;

(b) **Any other felony** committed in conjunction with a misdemeanor described in KRS Chapter 510;

(c) Any **felony** under KRS 506.010 ...

(Emphasis supplied by district court.)

However, as J.D.K. points out, the terms highlighted by the district court refer to persons under the age of eighteen who have been transferred to circuit court as "youthful offenders" to be tried as adults. Nothing in KRS 635.505(2) reveals an intent to repeal KRS 635.040 by implication by treating as a convicted felon a juvenile who has been adjudicated a public offender in juvenile court.

Finally, the district court reasoned that if the legislature had intended to exclude juvenile offenders from the DNA database, it could have defined the term *person* more precisely in the statute. Because the legislature is deemed to be aware of the technical distinction (and the resulting differences in the legal ramifications) between a conviction and an adjudication, there was no need for it to provide a more precise definition. On the contrary, we believe that if the legislature had intended to include within the statute those minors adjudicated in juvenile court, it would have articulated that intent clearly and unambiguously as have legislatures in other jurisdictions.[1] We hold that the district court erred in effectively enhancing the statute to encompass juveniles.

The judgment of the Jefferson Circuit Court is reversed, and the matter is remanded to the Jefferson District Court with directions to vacate its order requiring J.D.K. to provide a blood sample for the DNA database.

ALL CONCUR.

---

1. *See,* e.g., K.S.A. § 21–2511(a), which describes those subject to inclusion in the Kansas DNA database as: "Any person convicted as an adult **or adjudicated as a juvenile offender** ..." K.S.A. § 21–2511(a).